In the Interest of A.B.P.,
a Minor Child.

No. 05–07–01748–CV.

Court of Appeals of Texas,
Dallas.

June 17, 2009.

James Nygaard, McKinney, TX, for Appellant.

Loretta A. Keller, Plano, TX, for Appellee.

Before Justices BRIDGES, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

This is an appeal from a final order issued after a hearing on counter-petitions to modify the parent-child relationship. In six issues, J.P. (Father) challenges the provisions in the order (1) removing him as joint managing conservator and appointing B.P. (Mother) as sole managing conservator, (2) giving Mother the right to designate a three-week period of travel every other summer before Father designates his extended period of summer possession, (3) awarding $11,040 to Mother as a sanction against Father for violating notice provisions in the divorce decree, (4) awarding Mother attorneys' fees, and (5) classifying Mother's attorneys' fees as a child support arrearage. We reverse the provision of the trial court's order removing Father as joint managing conservator and appointing Mother sole managing conservator and affirm the remainder of the trial court's order.

### BACKGROUND

Mother and Father were divorced in 2005, when their son, A.B.P., was two. In the divorce decree, Mother and Father were appointed joint managing conservators, and Mother was given the exclusive right to designate A.B.P.'s primary residence within Collin County and contiguous counties. Father was ordered to pay Mother $1,000 per month in child support and to notify Mother of any change in employment, via certified mail within seven days. The decree also required Father to maintain health insurance for A.B.P. through Father's United Health Care insurance, and to notify Mother within fifteen days of (1) any termination of, or lapse in, coverage, and (2) the availability of other health insurance for A.B.P.

In 2006, Father filed a petition to modify the parent-child relationship, in which he sought to reduce his child support obligation. The trial court conducted a hearing on Father's petition in December 2006 and issued an order in January 2007 reducing his child support obligation to $600 per month. The trial court also found that Father had not paid the costs of A.B.P.'s health insurance, as required under the terms of the 2005 decree, and awarded $1,120 to Mother to cover the six months of health insurance premiums she had paid for A.B.P.'s health insurance through her work.

In April 2007, Father filed another petition to modify the parent-child relationship, in which he generally alleged that there had been a material and substantial change in circumstances since the entry of the prior order and specifically alleged that Mother "has had an order deferring adjudication with regard to an offense involving family violence" and "has a history or pattern of committing family violence." In that petition, Father sought the exclusive right to designate A.B.P.'s primary residence, to terminate his child support obligation, and to receive child support from Mother. Father also asked that Mother be ordered to complete a battering intervention and prevention program.

In May 2007, Mother answered and filed a counter-petition seeking, among other things, to be designated the exclusive custodian of A.B.P.'s passport and the right to designate a three-week period for travel with A.B.P. every other summer before Father designates his extended periods of summer possession. Mother's counter-petition included a motion for sanctions, in which she sought sanctions against Father

for two reasons. First, she sought sanctions because Father failed to notify Mother and the trial court that he found a new job and started working on December 29, 2006—between the time of the hearing on Father's 2006 petition to modify and the trial court's January 2007 order reducing his child support. She alleged that Father's failure to comply with the notice provision of the divorce decree prevented her from seeking an appropriate amount of child support starting in January 2007. She asked the trial court to sanction Father and order him to pay Mother an amount equal to or greater than twice the amount of additional child support she would have received from Father if his actual income had been used to calculate his child support obligation under family code guidelines. Second, Mother sought sanctions against Father for failing to notify her and the trial court that he enrolled A.B.P. in his new employer's health insurance plan beginning in January 2007. More specifically, Mother alleged that she kept A.B.P. enrolled in her employer's health insurance plan, and the costs of his enrollment were deducted from her wages unnecessarily, because Father did not comply with the divorce decree and inform her that A.B.P. had other health insurance. She asked the trial court to sanction Father and order him to pay Mother an amount equal to or greater than twice the amount of A.B.P.'s health insurance premiums deducted from Mother's wages beginning in January 2007.

In June 2007, Father filed an amended petition to modify, in which he again generally alleged a material and substantial change in circumstances, but did not allege family violence. In his amended petition he sought, among other things, to be appointed sole managing conservator of A.B.P., or in the alternative, joint managing conservator with the exclusive rights to designate A.B.P.'s primary residence and to make decisions about A.B.P.'s education. In his amended petition, he also sought to abate his child support obligation and to receive child support from Mother, or in the alternative, for his child support obligation to be decreased.

After a three-day hearing, the trial court issued an order in which, among other things, it (1) removed both parents as joint managing conservators, appointed Mother sole managing conservator, and appointed Father possessory conservator, (2) gave Mother the exclusive right to apply for and maintain possession of A.B.P.'s passport and the right to designate three weeks of possession every other summer before Father designates his extended period of summer possession, and (3) ordered Father to pay $1,380 per month in child support. The trial court also granted Mother's motion for sanctions and ordered Father to pay $11,040 to Mother as a sanction for violating the notice provisions in the divorce decree. The trial court also ordered Father to pay $15,000 to Mother for her attorneys' fees in the instant proceeding, $5,000 of which had already been paid pursuant to a temporary order, and an additional $4,500 in attorneys' fees previously awarded to Mother in two prior proceedings that remained unpaid. The trial court also designated the remaining $10,000 in attorneys' fees awarded for the instant proceeding and the $4,500 awarded in past proceedings as "in the nature of child support" and as "a child support arrearage." Father timely requested, and the trial court timely filed, written findings of fact and conclusions of law.

### ISSUES ON APPEAL

Father raises six issues on appeal challenging the provisions in the trial court's order modifying conservatorship and visitation, awarding sanctions against Father, awarding attorneys' fees to Mother, and

classifying Mother's attorneys' fees as "in the nature of child support" and as "a child support arrearage."

## STANDARD OF REVIEW

Most appealable issues in a family law case, including the issues in this case, are evaluated under an abuse-of-discretion standard. *See In re B.M.*, 228 S.W.3d 462, 464 (Tex.App.-Dallas 2007, no pet.) (orders regarding child custody, control, possession, and visitation reviewed for abuse of discretion); *In re R.C.S.*, 167 S.W.3d 145, 152 (Tex.App.-Dallas 2005, pet. denied) (award of attorneys' fees in modification proceeding reviewed for abuse of discretion); *In re C.Z.B.*, 151 S.W.3d 627, 636 (Tex.App.-San Antonio 2004, no pet.) (sanctions award reviewed for abuse of discretion). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *In re M.J.*, 227 S.W.3d 786, 790 (Tex.App.-Dallas 2006, pet. denied).

 In family law cases, the abuse-of-discretion standard of review overlaps with the traditional sufficiency standards of review; as a result, insufficiency of the evidence is not an independent ground of reversible error, but instead constitutes a factor relevant to our assessment of whether the trial court abused its discretion. *In re Marriage of Roberson*, No. 05–07–01061–CV, 2008 WL 4868345, at *3 (Tex.App.-Dallas Nov. 12, 2008, no pet.) (mem. op.). To determine whether the trial court abused its discretion we consider whether the trial court (i) had sufficient evidence upon which to exercise its discretion and (ii) erred in its exercise of that discretion. *Id.* We conduct the applicable sufficiency review with regard to the first question. *Id.*

## ANALYSIS

### Modification of Conservatorship

 In his first issue, Father challenges the trial court's decision to remove him as joint managing conservator and to appoint mother as sole managing conservator. He argues that the evidence is insufficient to support the trial court's decision. A party may challenge the sufficiency of the evidence in a nonjury trial for the first time on appeal. *See* TEX.R.APP. P. 33.1(d). Consequently, we determine whether trial court had sufficient evidence upon which to exercise its discretion. *In re Marriage of Roberson*, 2008 WL 4868345, at *3.

 Under section 156.101 of the family code, a trial court may modify conservatorship of a child if the modification is in the child's best interest, and the circumstances of the child, a conservator, or other party affected by the existing conservatorship order have materially and substantially changed since the rendition of the existing order. TEX. FAM.CODE ANN. § 156.101(1)(A) (Vernon 2008). To demonstrate that a material and substantial change of circumstances has occurred, the evidence must show what conditions existed at the time of the entry of the prior order as compared to the circumstances existing at the time of the hearing on the motion to modify. *See In re C.C.J.*, 244 S.W.3d 911, 919 (Tex. App.-Dallas 2008, no pet.). In other words, "the record must contain both historical and current evidence of the relevant circumstances," otherwise "the court has nothing to compare and cannot determine whether a change has occurred." *Zeifman v. Michels*, 212 S.W.3d 582, 594 n. 2 (Tex. App.-Austin 2006, pet. denied).

 Because the trial court is in the best position to observe the demeanor and personalities of the witnesses, the question

of conservatorship of a child is addressed to the sound discretion of the trial court when it sits as trier of fact. *Jeffers v. Wallace*, 615 S.W.2d 252, 253 (Tex.Civ. App.-Dallas 1981, no writ). The best interest of the child is always the primary consideration in determining issues of conservatorship. *See* TEX. FAM.CODE ANN. § 153.002. Nevertheless, a material and substantial change in circumstances is a statutory prerequisite to modifying conservatorship. *Id.* § 156.101(1). And although a court's determination as to whether a material and substantial change in circumstances has occurred is not guided by rigid rules and may be proved in a variety of ways, courts "have consistently required that a change be proved and that it be shown to be substantial and material." *Zeifman*, 212 S.W.3d at 593. As the Austin Court of Appeals recently explained,

> The policy behind the requirement of a material and substantial change is to prevent constant relitigation with respect to children. When establishing the means to modify custody orders, the legislature established a system that attempts to create stability in the conservatorship. Thus, the party seeking modification bears the burden of demonstrating a material and substantial change in circumstances since the original decree. The requirement of this showing serves a valid purpose of significantly limiting the trial judge's discretion and prevents the modification statute from being unconstitutionally broad.

*Id.* at 595 (internal citations and quotation omitted); *see also In re T.L.S.*, No. 02–08–00238–CV, 2009 WL 976007, at *3 (Tex. App.-Fort Worth Apr. 9, 2009, no pet.) ("In an effort to ensure stability and continuity for children, Texas law has imposed 'significant hurdles' before a conservatorship order may be modified.").

The trial court stated in its findings of fact and conclusions of law that Mother and Father "do not get along well enough to effectively parent [A.B.P.] as joint managing conservators" and that it is not in A.B.P.'s best interest to appoint Mother and Father as joint managing conservators. The trial court did not expressly state in its findings of fact and conclusions of law that there had been a material and substantial change in the circumstances of a party affected by the order to be modified. However, Mother generally pleaded a material and substantial change in circumstances in her counter-petition, and the trial court found that the material allegations in her counter-petition were true. But in addition to alleging a material and substantial change in circumstances in her counter-petition, Mother was also required to prove that allegation by a preponderance of the evidence. *See Agraz v. Carnley*, 143 S.W.3d 547, 553 (Tex.App.-Dallas 2004, no pet.).

On appeal, Mother argues that the evidence was sufficient to demonstrate a material and substantial change in circumstances. To support her argument, she refers to evidence demonstrating that Mother and Father do not get along, including Father's testimony that she did not allow him to see A.B.P., that she was reluctant to follow doctor's orders, and that she withdrew permission for A.B.P. to change preschools after she initially agreed to let him change. At trial, however, Mother repeatedly testified that there had been no "significant change in anybody's circumstances" since the entry of the prior modification order. And although Mother and Father both indicated in their testimony that they continued to have difficulty communicating and getting along with each other, there is no evidence that the difficulty was new or different since the entry of the prior order. In short, the evidence in this case does not

show what conditions existed at the time of the entry of the prior order as compared to the circumstances at the time of the hearing in this case. Without this, the evidence is legally insufficient to support a modification of conservatorship. *See id.* at 554.

Consequently, and based on the record in this case, we conclude that the evidence is legally insufficient to support the trial court's exercise of its discretion to modify conservatorship. *See Zeifman,* 212 S.W.3d at 593–96 (evidence legally insufficient to demonstrate material and substantial change in circumstances to support modification of conservatorship). Accordingly, we conclude that the trial court abused its discretion in modifying conservatorship because it did not have sufficient evidence upon which to exercise its discretion. *See id.* at 596. We sustain Father's first issue.[1]

## Designation of Extended Periods of Summer Possession

In his second issue, Father complains about the trial court's decision to allow Mother to designate a three-week period for travel with A.B.P. during the summer months in even-numbered years before Father designates his extended periods of summer possession during those years. More specifically, he argues that the trial court did not have authority to deviate from the visitation provisions for parents who live less than 100 miles apart contained in a standard possession order under the family code.

As a general rule, a party is required to present a complaint to the trial judge before being allowed to raise the issue on appeal. *See In re L.M.I.,* 119 S.W.3d 707, 711 (Tex.2003) (citing Tex.R.App. P. 33.1); *Birnbaum v. Law Offices of G. David Westfall, P.C.,* 120 S.W.3d 470, 476 (Tex. App.-Dallas 2003, pet. denied) ("Without a proper presentation of the alleged error to the trial court, a party does not afford the trial court the opportunity to correct the error."). Consequently, as a threshold matter, we must determine whether Father has preserved this issue for appellate review. *See In re M.S.,* 115 S.W.3d 534, 547 (Tex.2003) (noting "error preservation in the trial court [ ] is a threshold to appellate review"). In this case, the trial court stated at the conclusion of the hearing that it "was going to order that [Mother] be allowed to designate a 21 day period for travel prior to [Father] designating his periods during the summer." Father did not object to this announcement, and did not file a motion for new trial after the trial court issued its final order. We conclude that Father's argument regarding the designation of extended periods of summer possession has not been preserved for appellate review. *Cf. In re Marriage of Roberson,* 2008 WL 4868345, at *2 (appellant did not preserve for appellate review issue of whether trial court was precluded from appointing father joint managing conservator due to history of family violence because argument was not raised during trial or in motion for new trial); *Martinez v. Martinez,* 157 S.W.3d 467, 471 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (appellant did not preserve for appellate review issue of whether joint managing conservatorship conflicted with section 153.004 because "[n]o mention of any of the provisions in [s]ection 153.004 was made by either party in the court

---

1. Father also argues that the trial court's order does not conform to the pleadings because Mother did not ask to be appointed sole managing conservator in her counter-petition. Because we conclude the the evidence is le- gally insufficient to support the modification of conservatorship, we do not address this argument, including whether it was properly preserved for appellate review.

below"). We overrule Father's second issue.

## Sanctions Award

■ In his third issue, Father argues that the trial court abused its discretion when it ordered him to pay Mother $11,040 as a sanction for violating the notice provisions of the divorce decree. Citing Texas Rule of Civil Procedure 215.3 and cases addressing discovery sanctions, Father argues that "[t]he Texas Rules of Civil Procedure do not permit the Trial Court to impose an arbitrary monetary fine against a party as a punitive measure."

At the end of the hearing in this case, the trial court announced that it was "going to order that father pay mother the amount of $11,040 in expenses for disobeying the court's order." Father did not object to this announcement, nor did he file a motion for new trial after the trial court issued its order sanctioning Father. We conclude that Father has not preserved his complaint about the sanction award for appellate review. *See* TEX. R.APP. P. 33.1(a); *In re A.A.F.*, 120 S.W.3d 517, 519 (Tex.App.-Dallas 2003, no pet.). We overrule Father's third issue.

## Award of Attorneys' Fees

■ In his fourth issue, Father argues that the evidence is insufficient to support the award of $15,000 in attorneys' fees to Mother. We disagree.

■ The family code allows the trial court to award attorneys' fees in suits affecting the parent-child relationship. TEX. FAM.CODE ANN. § 106.002. There are several factors a trial court should consider in determining the amount of reasonable attorneys' fees to award. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp. 2008) (Tex.

State Bar R. art. X, § 9); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997); *Hays & Martin, L.L.P. v. Ubinas–Brache*, 192 S.W.3d 631, 636 (Tex.App.-Dallas 2006, pet. denied). These factors include: the time, labor and skill required to properly perform the legal service; the novelty and difficulty of the questions involved; the customary fees charged in the local legal community for similar legal services; the amount involved and the results obtained; the nature and length of the professional relationship with the client; and the experience, reputation and ability of the lawyer performing the services. *Arthur Andersen & Co.*, 945 S.W.2d at 818. But a trial court is not required to receive evidence on each of these factors. *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 897–98 (Tex. App.-Dallas 2003, no pet.). The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties. *Id.* at 897. Testimony from a party's attorney about a party's attorneys' fees is taken as true as a matter of law if the testimony "is not contradicted by any other witness and is clear, positive, direct, and free from contradiction." *Blockbuster, Inc. v. C–Span Entm't, Inc.*, 276 S.W.3d 482, 490 (Tex.App.-Dallas 2008, pet. granted, judgm't vacated w.r.m.) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990)). This is especially true where the opposing party had the means and opportunity to disprove the testimony but failed to do so. *Id.*

Mother testified that she had to hire a lawyer in connection with this suit, and that her attorneys' fees through the start of trial totaled $12,500. Mother's attorney

also testified as follows regarding her attorneys' fees:

> I've been licensed in the State of Texas to practice law since 1984. I have practiced in the community, in this community for approximately 15 years in the area of family law. I bill my time at a rate of $250 an hour and it was necessary for [Mother] to hire me to defend this lawsuit. To start the trial, the fees that were billed, that she had incurred, were in the vicinity of $12,500 and that I believe through the end of this trial, $2500 will be billed to her for a total of $15,000. I believe those fees were reasonable and necessary in the prosecution of this case and I'm familiar with the customary fees in this community and that I believe my fees fall within that range.

In response, Father did not submit any controverting evidence about Mother's attorneys' fees or otherwise challenge Mother's request for attorneys' fees or supporting evidence.

■ On appeal, Father argues that the evidence is insufficient to support the award of attorneys' fees in this case because Mother's attorney did not submit any documentary evidence to support her testimony, such as her fee agreement or billing statements. Documentary evidence, however, is not a prerequisite to an award of attorneys' fees. *See, e.g., Burnside Air Conditioning,* 113 S.W.3d at 897–98 (evidence limited to attorney's testimony about his experience, total amount of fees, and reasonableness of fees sufficient to support award of attorneys' fees); *In re H.S.N.,* 69 S.W.3d 829, 835 (Tex.App.-Corpus Christi 2002, no pet.) (attorney's testimony about his experience and necessity and reasonableness of fees charged was sufficient to support award of attorneys' fees); *In re Pecht,* 874 S.W.2d 797, 803–04 (Tex.App.-Texarkana 1994, no writ) (attor-

ney's uncontroverted testimony that "based on her experience as a lawyer and her evaluation of the issues in the case, $7,500 would be a reasonable and necessary fee for handling an appeal of the case" supported award of $7,500 in attorneys' fees for appeal); *MacCallum v. MacCallum,* 801 S.W.2d 579, 587 (Tex.App.-Corpus Christi 1990, writ denied) (attorney's uncontradicted testimony about his experience, hourly rate, services provided, and reasonableness of $2,161 in attorneys' fees charged was sufficient to support award of $1,680 in attorneys' fees). We conclude that the evidence is sufficient to support the trial court's award of attorneys' fees. We overrule Father's fourth issue.

### Classification of Mother's Attorneys' Fees

■ In his fifth and sixth issues, Father challenges the portion of the trial court's modification order in which it classified $10,000 in attorneys' fees awarded to Mother in the instant proceeding, and $4,500 in attorneys' fees awarded to Mother in two prior proceedings but remaining unpaid, as "in the nature of child support" and as "a child support arrearage." At the conclusion of the hearing, the trial court announced that it intended to award attorneys' fees to mother "in the nature of child support." The record demonstrates that no motion or objection was raised with the trial court, either before or after the order was signed, about the classification of attorneys' fees. Consequently, we conclude that these issues were not preserved for appellate review. *See* Tex.R.App. P. 33.1(a) (preservation of complaint requires making it to trial court by timely request, objection, or motion, and either ruling or refusal to rule by trial court); *see also In re A.R.,* 236 S.W.3d 460, 473 (Tex.App.-Dallas 2007, no pet.) (mother did not preserve appellate argument that trial court erred when it

awarded attorneys' fees in the nature of child support because she did not raise argument in trial court); *Goodson v. Castellanos*, 214 S.W.3d 741, 760–61 (Tex. App.-Austin 2007, pet. denied) (conservator did not preserve for appellate review complaint that trial court erred in awarding attorneys' fees in the nature of child support because she did not present complaint to trial court); *In re C.S.*, 198 S.W.3d 855, 857 (Tex.App.-Dallas 2006, no pet.) ("Almost all trial error, even constitutional error, is waived if appellant fails to object to the error at trial."). We overrule Father's fifth and sixth issues.

## CONCLUSION

We sustain Father's first issue, reverse the portion of the trial court's order removing him as joint managing conservator and appointing mother sole managing conservator, and remand for entry of an order consistent with this opinion. We overrule Father's other issues and affirm the remainder of the trial court's order.