

# NUMBER 13-24-00068-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN THE INTEREST OF J.L., A CHILD

---

## ON APPEAL FROM THE 146TH DISTRICT COURT
## OF BELL COUNTY, TEXAS

---

## MEMORANDUM OPINION

### Before Chief Justice Tijerina and Justices West and Cron
### Memorandum Opinion by Chief Justice Tijerina

By four issues, appellant Father appeals the trial court's order modifying the parent child relationship.[1] Father contends that (1) the trial court abused its discretion by increasing the amount of child support and the payment for the cost of Child's health insurance; (2) the trial court deprived Father "of his Constitutionally protected liberty interest in his care, possession and management of [Child] because of [Father's] indigence, in violation of Due Process and Fundamental Fairness guarantees of the

---

[1] We use pseudonyms to protect the identity of the child. *See* TEX. FAM. CODE ANN. § 109.002(d).

Fourteenth Amendment"; (3) the trial court abused its discretion "by focusing on punishing [Father] for his initial failure to submit to a drug test entered without notice of hearing to him, rather than base the orders for possession and access upon [Child's] best interests"; and (4) in the alternative, we should reform the judgment. We affirm in part and reverse and remand in part.[2]

## I. BACKGROUND

On June 24, 2020, the trial court appointed appellee Mother and Father joint managing conservators of Child with Mother having the right to establish the primary residence of Child (original order). Father was awarded standard possession pursuant to the family code. The trial court ordered Father to pay $349 per month in child support, but he was not ordered to pay any amount for Child's health insurance.

On August 3, 2020, Mother filed a petition to modify the original order alleging that "[t]he circumstances of [C]hild, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified." Mother claimed that she had "information that [Father was] using illegal drugs" and requested that the trial court order Father to submit to fingernail drug testing. Mother further asked that Father's visits with Child be supervised if Father "fail[ed], refus[ed], or alter[ed] the nail drug test."

On August 5, 2020, the trial court granted Mother's motion for drug screening and ordered Father to submit to a spontaneous supervised urine analysis and a nail drug test. The order stated, "If [Father] tests positive for a controlled substance or fails to comply

---

[2] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

2

with the terms of this order when requested to submit to a drug screening, all periods of possession by [Father] shall be discontinued until further order of the Court."

On July 8, 2021, Father filed a counterpetition to modify the original order alleging that "[t]he circumstances of [C]hild, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of the rendition of the order to be modified." Father stated the following:

> [Father] should be appointed the conservator with the exclusive right to determine [Child's] residence, the exclusive right to receive and give receipt for periodic payments for the support of [Child] and to hold and disburse the funds [for] the benefit of the [Child], and the exclusive right to make educational decisions. [Father] requests all other rights be exercised independently. [Father] requests that [Mother] be given a possession under a standard possession order.

On March 13, 2023, Father filed a motion for temporary restraining order, temporary injunction and temporary orders requesting that the trial court restrain Mother from withdrawing Child from his current school without Father's consent and requesting possession of Child. Father asked the trial court to order Mother not to allow Child to have any contact with a certain minor family member, Todd. Father alleged in another pleading that Child told him that Todd had sexually abused Child. On March 29, 2023, the trial court held a hearing on Father's petition to modify and for temporary orders, and after a hearing, it denied Father's motion and made a temporary order that Mother "continues to have primary, [Father] has continued [possession] rights per prior orders," and Child would "remain in school and speech therapy."[3]

---

[3] Mother presented evidence at this hearing that the police investigation concerning Father's allegations had been closed "as unfounded," and a caseworker for the Department of Family and Protective Services (CPS) testified that due to his disability, Child was unable to speak to her, the sexual abuse nurse examiner, or the forensic interviewer. The caseworker stated that although she attempted several times, she was unable to contact Father regarding the allegations. The caseworker testified that the case was closed due to a "conclusion of no findings" because Child "did not articulate, did not give a consistent

On April 4, 2023, Mother filed a counterpetition to modify the original order to increase child support due to a material and substantial change in circumstances. Mother alleged that Father "has a history of abusing controlled substances" and requested that the trial court order Father "to submit to a 10-panel fingernail and hair follicle drug test." Mother requested "temporary orders for the safety and welfare of [Child], including, but not limited to" giving Mother "the exclusive right to apply and control the child's passport" and ordering that Father "provide guideline child support . . . including . . . medical and dental support in the manner specified by the [trial c]ourt, while the case is pending."

On April 25, 2023, the trial court held a hearing wherein Father failed to appear. The trial court granted Mother's motion for drug testing and ordered Father to "immediately submit to a spontaneous 10-Panel Nail Drug Test at Any Lab Test." The order states:

> If [Father] tests negative on the supervised 10-Panel Nail Drug Test, he shall immediately resume his possession and access schedule until further order of the Court.
>
> If [Father] tests positive for a controlled substance or fails to comply with the terms of this order when requested to submit to a drug screening, all periods of possession by [Father] shall be discontinued until further order of the Court.

Father did not report for drug testing and filed a motion to set aside the trial court's drug screening order claiming he did not appear at the hearing because he did not receive

---

outcry," and did not outcry during the forensic interview. Finally, the caseworker said that after reviewing a video that Father recorded of Child making the allegations, "there were concerns for leading questions during that interview." The caseworker testified that the school personnel informed her that Child "is in a special needs or more relatively ratio-lower classroom" and they had reported that another child in that class also named Todd had assaulted Child. The caseworker explained that the teacher believed there has been a "miscommunication" because "it was hard to kind of pull out of [Child] what the concerns are or what actually happened. . . ."

4

notice. The trial court held a hearing on Father's motion and denied it.

On September 12, 2023, the trial court held a hearing on Father's motion to modify the original order, and it "continue[d] to require [Father] to submit to drug test as previously ordered with no visitation until a neg[ative] test is obtained." Father failed to take the ordered drug tests.

On October 30, 2023, the trial court held a hearing wherein Mother and Father testified. The trial court granted Mother's petition to modify the original order and signed the modification order on December 20, 2023, appointing Mother sole managing conservator with a geographical restriction and appointing Father as possessory conservator. The trial court ordered however that for three months, Father would only be allowed to have supervised visits with Child, and Father would pay for the supervised visits ("Stage 1"). The trial court further ordered that during Stage 1 Father would submit to a ten-panel nail drug test at his expense within ten days of the order and then another ten-panel nail drug test ten days "before end of [the] final three month supervised visitation period." The trial court stated that "[o]nce [Father] consecutively attend[ed]" his supervised visitation schedule, for three months "without missing any visits," and "he passes both 10-panel nail drug tests" Father and Mother would "be named Joint Managing Conservators" of Child ("Stage 2"). The trial court issued an injunction against Father and prohibited Father from going to Child's school until he had a standard possessory order. The trial court ordered Father to pay child support of $479.72 and health insurance of $ 587.58 per month. This appeal followed.

## II.    STANDARD OF REVIEW

Modification orders are reviewed for an abuse of discretion. *In re T.M.P.*, 417

5

S.W.3d 557, 562 (Tex. App.—El Paso 2013, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)); *In re M.A.M.*, 346 S.W.3d 10, 13 (Tex. App.—Dallas 2011, pet. denied); *see Gonzales v. Gonzales*, 704 S.W.3d 54, 78 (Tex. App.—Austin 2024, no pet.) (providing that a trial court's order modifying financial support is reviewed for an abuse of discretion (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990))); *see also Vanderbol v. Vanderbol*, No. 02-23-00230-CV, 2024 WL 1925141, at *2, *9 (Tex. App.—Fort Worth May 2, 2024, pet. denied) (mem. op.) (reviewing a child support judgment for an abuse of discretion); *B.K. v. T.K.*, No. 02-19-00472-CV, 2021 WL 2149621, at *2 (Tex. App.—Fort Worth May 27, 2021, no pet.) (mem. op.) (listing cases wherein courts of appeals review child support and possession orders for an abuse of discretion). "A [trial] court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding rules or principles." *Gonzales*, 704 S.W.3d at 78 (quoting *Norman v. Martin*, No. 03-17-00704-CV, 2019 WL 1388719, at *5 (Tex. App.—Austin Mar. 28, 2019, no pet.) (mem. op.)). "A trial court does not abuse its discretion as long as some evidence of a probative nature exists to support the court's decision, and we generally will not find an abuse of discretion when the trial court bases its decision on conflicting evidence." *Id.*

Sufficiency of the evidence in a family law case is a relevant factor we consider in determining if the trial court abused its discretion. *In re A.L.S.*, 338 S.W.3d 59, 65 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *London v. London*, 94 S.W.3d 139, 143–44 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *see also Vanderbol*, 2024 WL 1925141, at *2. We utilize a two-part test to analyze whether the trial court abused its discretion. *In re T.M.P.*, 417 S.W.3d at 562. First, we must determine if there was sufficient

6

information for the trial court to exercise its discretion; then, we determine if the trial court's application of its discretion constituted error. *Id.* "The operative inquiry in the first question is the sufficiency of the evidence." *Id.* at 563 (citing *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.)).

In our review of the legal sufficiency of the evidence to support a trial court's findings, we view the record in the light most favorable to the judgment. *Id.* For factual sufficiency analysis, "we consider and weigh all the evidence, and will set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *Id.* We will not find a trial court abused its discretion "if evidence of a substantive and probative character exists to support its decision."[4] *Id.*

### III.   FINANCIAL SUPPORT

By his first issue, Father contends that the trial court abused its discretion by modifying the amount of child support and amount he must pay for Child's health insurance because there was legally and factually insufficient evidence of his income and of a material and substantial change in the parties' circumstances since the original order.

### A.   Applicable Law

Section 156.401 provides that a trial court may modify child support if "the circumstances of the child or a person affected by the [child support order] have materially and substantially changed." TEX. FAM. CODE ANN. § 156.401(a)(1); *Bates v. Tesar*, 81 S.W.3d 411, 427 (Tex. App.—El Paso 2002, no pet.). The party seeking modification of

---

[4] "Where, as here, the trial court does not file findings of fact and conclusions of law, we imply all necessary findings of fact to support the trial court's order." *In re T.M.P.*, 417 S.W.3d 557, 563 (Tex. App.— El Paso 2013, no pet.).

child support has the burden of proving that a change in circumstances has occurred. *In re Knott*, 118 S.W.3d 899, 902 (Tex. App.—Texarkana 2003, no pet.). To determine if there has been a change in circumstances, a trial court must compare conditions existing when the prior child support order was entered with evidence of conditions existing when the hearing on the petition to modify child support occurs. *In re T.M.P.*, 417 S.W.3d at 563–64.

The trial court has very limited discretion when calculating child support. *In re A.L.S.*, 338 S.W.3d at 65. "The amount of a periodic child support payment established by the child support guidelines in effect in this state at the time of the hearing is presumed to be reasonable, and an order of support conforming to the guidelines is presumed to be in the best interest of the child." TEX. FAM. CODE ANN. § 154.122. However, a trial court "may order periodic child support payments in an amount other than that established by the guidelines if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines" so long as it considers certain factors. *Id.* at § 154.123.

## B.    Child Support

The trial court increased Father's child support to $479.72. However, no evidence of Father's wage or salary income was presented to the trial court at the modification hearing.

"Absent evidence of wage and salary income, the trial court was required to presume that [Father] has wages and salary equal to the federal minimum wage for a forty-hour week. *See Gonzalez v. Gonzalez*, 331 S.W.3d 864, 868 (Tex. App.—Dallas 2011, no pet.) (citing TEX. FAM. CODE ANN. § 154.068). The federal minimum wage as

recognized by the family code is $7.25 per hour, multiplied by forty hours per week multiplied by fifty-two weeks per year, which is $15,080 per year gross pay and $1,256.57 gross pay per month. TEX. FAM. CODE ANN. § 154.061. The amount an obligor is required to pay when there is one child is twenty percent of the obligor's *net* income. *Id.* §§ 154.062, 154.125.

Here, twenty percent of a minimum wage *gross* pay per month ($1,256.57 × 0.20 = $251.31) is less than the amount of $479.72 per month of child support ordered by the trial court. Accordingly, there is no evidence to support a child support obligation in the amount of $479.72 per month as ordered. *See Gonzalez*, 331 S.W.3d at 867–68 (finding that the trial court abused its discretion by awarding a child support amount without evidence of the father's net resources); *Miles v. Peacock*, 229 S.W.3d 384, 390 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("The Family Code requires a trial court to 'calculate net resources' in determining a party's current and retroactive child support obligations"); *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (substituted op.) ("There must be some evidence of a substantive and probative character of net resources in order for this duty [to calculate net resources for child-support calculation] to be discharged."); *see also B.K.*, 2021 WL 2149621, at *4 (concluding that the trial court abused its discretion awarding child support because the "[h]usband provided no evidence to support [the] amount" awarded including, "nothing concerning [the wife's] employment, wages, salary, or other income" and the husband did not provide "evidence that would support the findings necessary for the trial court to deviate from the child-support guidelines).

9

Additionally, no evidence was presented which would support the findings necessary for the trial court to deviate from the child-support guidelines. *See* TEX. FAM. CODE ANN. § 154.123; *see also B.K. v. T.K.*, 2021 WL 2149621, at *4 ; *Steele v. Steele*, No. 03-07-00011-CV, 2009 WL 2567911, at *4 (Tex. App.—Austin Aug. 19, 2009, no pet.) (mem. op.). Furthermore, Mother did not produce evidence that a change in circumstances warranting an increase in child support had occurred as neither the child's nor the parents' financial circumstances were addressed at the hearing. *See In re Knott*, 118 S.W.3d at 902; *see also* TEX. FAM. CODE ANN. § 156.401 (setting out that a trial court may modify child support when "the circumstances of the child or a person affected by the order have materially and substantially changed" since the original order).

Therefore, viewing the evidence in the light most favorable to the trial court's ruling, the evidence is legally insufficient to support the trial court's modification of Father's child support obligations. *See In re T.M.P.*, 417 S.W.3d at 563. Accordingly, having determined that the trial court lacked sufficient information to increase Father's child support, we conclude the trial court abused its discretion. *See id.*

## C.    Health Insurance

Father also argues that there was no evidence concerning the cost of health insurance or the availability of private health insurance; therefore, the trial court abused its discretion in ordering Father to pay $587.58 per month for the cost of health insurance.

The family code states that the obligor must pay for health insurance if it does not exceed nine percent of the obligor's net monthly resources. TEX. FAM. CODE ANN. § 154.181(e). Section 154.182 provides that if the child's health insurance is not available at a reasonable cost, a government program shall provide the health insurance.

10

*Id.* § 154.182. Here, no evidence concerning Father's income or the Child's health insurance was presented to the trial court. Therefore, the evidence is legally insufficient to support the trial court's order that Father pay $587.58 per month for Child's health insurance. *See In re T.M.P.,* 417 S.W.3d at 563. Thus, the trial court abused its discretion, and we sustain Father's first issue.[5] *See id.*

## IV. CONSERVATORSHIP

By his second issue, Father contends that the trial court deprived him "of his Constitutionally protected liberty interest in his care, possession and management of [the Child] because of [the Father's] indigence, in violation of Due Process and Fundamental Fairness guarantees of the Fourteenth Amendment," and the trial court abused its discretion "by focusing on punishing [the Father] for his initial failure to submit to a drug test entered without notice of hearing to him, rather than base the orders for possession and access upon the [C]hild's best interests."

### A. Indigence

First, Father argues that "the restrictions [requiring him to take two drug tests and pay for supervised visits] exceed any requirement to protect the child" because the trial court acknowledged that Father was "conscientious and caring." Father argues that "[i]t is manifestly unreasonable to expect [him] to be able to pay for two nail drug tests and six periods of supervised visitation through a paid supervisor, within three months with the $315.70 that he has each month to live on, after the erroneous child support and

---

[5] By a sub-issue to his fourth issue, Father seeks reformation of the judgment to state that he is obligated only to pay the amount of child support stated in the original order and he is not obligated to pay health insurance costs on the basis that the trial court did not pronounce such a judgment at the modification hearing. Given our disposition, this sub-issue is not dispositive, and we need not address it. *See* TEX. R. APP. P. 47.1.

health insurance amounts discussed supra are deducted."

However, Father did not make this argument to the trial court at the modification hearing. *See* TEX. R. APP. P. 33.1. Therefore, we conclude that this issue is not preserved. *See id.* We overrule Father's second issue.

## B.     Punishment

By his third issue, Father contends that the trial court abused its discretion by focusing on punishing him for not submitting to a drug test. Citing *In re A.V.,* Father states that "[i]n securing what is in the best interests of the child, the State is not supposed to be pursuing a retributive punitive aim, but a 'purely remedial function: the protection of minors.'"[6] 113 S.W.3d 355, 361 (Tex. 2003). As we understand it, Father argues that the trial court's order that he take drug tests was done as a purely punitive measure and therefore, an abuse of discretion.

The trial court's primary consideration is the child's best interest, and in analyzing the child's best interest, the trial court may consider the circumstances of the parents and "any other relevant factor." TEX. FAM. CODE ANN. §§ 153.002. 153.256. A trial court need not appoint a parent as a possessory conservator if it finds that the appointment "is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child." *Id.* § 153.191. "A parent's drug use can . . . qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being." *In re S.R.,* 452 S.W.3d 351, 361 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *In re C.A.B.,* 289 S.W.3d 874, 885 (Tex. App.—Houston [14th

---

[6] We have reviewed this case, and we find that it is inapplicable to the facts herein as it is a parental termination case. *See In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003).

Dist.] 2009, no pet.)). Therefore, if it is in the child's best interest, a trial court does not abuse its discretion by ordering drug testing of a parent. *See* TEX. FAM. CODE ANN. §§ 153.002, 153.256; *see also Schneider v. Schneider*, No. 01-22-00774-CV, 2024 WL 3349082, at *7 (Tex. App.—Houston [1st Dist.] July 9, 2024, no pet.) (mem. op.) ("Under appropriate circumstances, a trial court does not abuse its discretion by ordering future drug testing of a parent if it is in the child's best interest."); *In re L.G.K.S.*, No. 12-18-00178-CV, 2019 WL 4462693, at *9 (Tex. App.—Tyler Sept. 18, 2019, no pet.) (mem. op.) (determining that the trial court did not abuse its discretion by ordering drug testing of the parent); *In re A.B.R.*, No. 04-17-00220-CV, 2018 WL 3998684, at *4 (Tex. App.—San Antonio Aug. 22, 2018, no pet.) (mem. op.) (providing examples of "changed circumstances that are material and substantial under [§] 156.101(a)," including a "parent's abuse of drugs and alcohol").

Here, Mother's trial counsel reminded the trial court that on a previous occasion when the parties were in court to discuss a mediated settlement agreement, Father attended the hearing "clearly on something" and was "foaming out [of] his mouth." Mother's trial counsel reiterated that there were "concerns about [Father's] drug use, and we haven't gotten a drug test yet." Father, acting pro se at the modification hearing, asked Mother on direct examination, "Now my question is, prior to all of this what was your concern with the drugs come in at?" Mother replied, "It's always been a concern from day one from CPS and you doing cocaine, methamphetamines, and whatever else you put in your mouth all the way to now." Mother further stated that the CPS required her to submit to a drug test because Father failed a drug test that the Department requested. Mother answered affirmatively to Father's question that she had been required to take weekly

13

drug tests but clarified that she did so "because of" Father and they "both had to take drug tests." However, Mother testified her tests were negative and that she had "never had a drug use problem."

On cross-examination by her trial counsel, Mother stated that she was concerned because Father "has had a history of drug use." She also stated that Father "is continuing to use harsher drugs than marijuana." Mother testified that Father had been ordered to take a drug test on April 25, 2023, and he had not taken the test. According to Mother, after he failed to take the drug test, Father had been prohibited from accessing Child; however, Father nonetheless "attempted to sign [Child] out" of school. Mother's trial counsel asked, "[T]hat's because [the order] stated that if he did not take the test, it would be considered a positive. And all access to [Child] would stop until further order; is that correct?" Mother responded, "Yes ma'am." Father "came in high," "smelled like marijuana," and "his eyes [were] red," and she told him "until [he] c[a]me sober, [he] w[ould] not have access to [their] child driving inebriated."

"[W]e will reverse the order only if it appears from the record as a whole that the trial court abused its discretion." *In re J.D.D.*, 242 S.W.3d 916, 919 (Tex. App.—Dallas 2008, pet. denied). However, based on the record and viewing the evidence in the light most favorable to the trial court's ruling, we conclude that there was sufficient evidence to support the trial court's determination that it was in Child's best interest to order Father to submit to drug testing. *See* TEX. FAM. CODE ANN. § 153.002; *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied) (providing that wide latitude is given to a trial court in deciding child custody issues); *see also In re R.D.Y.*, 51 S.W.3d 314, 324 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (explaining that the trial court did not

14

abuse its discretion by placing conditions on the parent's right to possession of the child as it determined those conditions were in the child's best interest); *Schneider*, 2024 WL 3349082, at \*7. Thus, the trial court did not abuse its discretion in this regard. *See In re T.M.P.*, 417 S.W.3d at 563. We overrule Father's third issue.[7]

## V. CONCLUSION

We reverse the trial court's judgment in part and remand for proceedings consistent with this memorandum opinion. The judgment is affirmed in all other respects.[8]

JAIME TIJERINA
Chief Justice

Delivered and filed on the
24th day of April, 2025.

---

[7] By what we construe as two sub-issues to his third issue, Father states: (1) Father "maintains that it was an abuse of discretion and against the great weight of the evidence for the Court to grant [Mother] the exclusive right to make decisions about [Child's] education in Stage 1"; and (2) Father "maintains that it was an abuse of discretion for the Court to enjoin [Father], his agents, servants, employees, attorneys and those in active concert or participation with him who receive actual notice of this order by personal service or otherwise from going to the child's school in Stage I." We conclude that these two sub-issues are inadequately briefed as Father does not provide legal analysis with citation to appropriate authority to support these two assertions. *See* TEX. R. APP. P. 38.1. We overrule both sub-issues.

[8] By his fourth issue, Father requests that we reform the judgment due to several clerical errors; however, because we have reversed the judgment in part and remanded for further proceedings, the trial court will enter a new judgment. Thus, this issue is not dispositive, and we instruct the trial court to correctly set out the parties' rights in the new judgment as set out in Father's brief. *See* TEX. R. APP. P. 47.1.